May it please the court. My name is Tara Harris and I am presenting argument on behalf of the appellant Carol LaFontaine. You're fading, you're fading in and out. You need to be closer to the microphone please. Try again. May it please the court. My name is Tara Harris and I am presenting argument on behalf of the appellant Carol LaFontaine. At this time I would like to reserve three minutes for rebuttal. This court should reverse the district court's order compelling arbitration because as this court stated in Knutson v Sirius XM radio, a party cannot be required to submit to arbitration a dispute which he has not agreed to submit. In doing so, this court should find an employer cannot enforce an employer-drafted opt-out arbitration agreement after employment has already begun without first providing indisputable evidence that the employee has received the arbitration agreement and made a voluntary, knowing, and intelligent waiver of the employee's constitutional rights. So the case we have that's closest on point is the Circuit City Nudge, which is actually fairly closely on point where the employee was presented with an arbitration agreement post-employment and was deemed because he had received it and continued working, I guess, and the opt-out was deemed to have consented. And the only distinction is that he signed an acknowledgement form. Here the question is whether she received it, but the acknowledgement form itself wouldn't really go to contract formation. So how would we, how would we not be bound by Circuit City Scores? Judge Akuda, I think that the case that you have just mentioned, Circuit City Scores, is distinguishable in the very important way that you just recognized. That being that the employer could prove that the employee received the opt-out arbitration because there was a signed acknowledgement by the employee that that agreement was in fact received. So if we decided that as a matter of Montana law, your client had received the contract, would that make the distinction go away so now we would be bound by Circuit City Scores? Your Honor, I don't believe so in a couple reasons. One, I think that if you show that she did in fact receive it, which I don't believe the evidence in this case actually establishes, if you do make that decision, you still have two other considerations you need to take into point. One being whether or not there was consideration, which Ms. LaFontaine does not believe exists here, and the second being whether or not the agreement itself was unconscionable because it was not. Counsel, I have a couple of questions following on from what Judge Akuda has asked. My recollection is that Circuit City Scores applied California law and that what we're applying here is Montana law, and so they may or may not be identical, even if the facts are identical. But I'm concerned sort of procedurally about the posture of the case. It seems to me that there are some significant factual disputes here. Your client said that a manager told her, oh, don't worry about it. You know, not a problem. The manager has a declaration that denies that that was ever said. That may be important under Montana law. I don't know whether it would be or not, but in the face of factual disputes, what is the court's obligation here? The court did not seem explicitly to make factual findings or hold a hearing with witnesses or anyway. I'm just somewhat baffled by the procedural aspect. Can you enlighten me? Yes, Judge Graber, I understand your concern, and thank you for pointing out that Midge is governed by California law, which is different than Montana. Well, was it really governed by California law? I didn't see that. I mean, they don't really cite California law when they get to the whole thing. They just have, you know, they cite to some district court case and a Southwest case, which I assume is not California. So, obviously, it happened in California, so California law is controlling, but they didn't actually rely on it. Judge Akuda, I think if you look to the case itself, with all due respect, it does state that it was analyzed under California state contract law, which is required under the FCC. If the arbitration agreement, the dispute is whether or not it is valid, then the FAA requires the court to analyze those contract principles under the state law. So, is there any Montana law on point, if that was one of the questions we had for you, was whether we should certify this to the Montana Supreme Court to tell us what the law is when there is an opt-out provision. And, Your Honor, there is not a direct case on point. This is an open first impression, and Ms. LaFontaine would support this court exercising its discretion to certify to the Montana Supreme Court. Could you speak louder, please? I'm sorry, I'm having trouble hearing you. As held by this court in Child Risk, the Costco wholesale, recently on October 19, 2020. In that case, this court certified an issue to the Montana Supreme Court, finding that one rule 15 of Montana appellate procedures did allow for it. Second, that issue itself presented an issue of first impression related to parasitic emotional distress damages in a personal property claim. Here, as the court cited in that case, there are four factors that this court considers in determining whether or not the issue should be certified. Counsel, this, excuse me, but my procedural question ties into this. How can we send a legal question when there are factual issues that need to be resolved in order to understand what the legal issue is? For example, it may be different if a manager says don't worry about this, or it may not, but it seems to me that that's the sort of factual dispute that has to be resolved before there's a legal question to certify. And I would appreciate your answer on what that procedure should be in a case like this. Your Honor, in responding to your question, Judge Graber, specifically about the disputed facts, the district court below basically made the determination that the totality of the circumstances that the facts were in that there are disputed facts. What the court should have done in a case of disputed facts is then conducted, allow the parties to conduct additional discovery. So if this court makes a determination that there are facts in dispute, then one to remand for the court to take further evidence on that issue. That being said, it is holiday, the employer's burden as the moving party to prove that a contract existed here. And with those facts and dispute, they don't have the ability to prove that. And as a result, it's another reason why the district court should have denied the motion to compel. So if we don't know what the law is for contract formation in this context, how do we know which facts are material? This is we don't know what the requirements are. Well, Judge Aikuda, I think that although this is a case of first impression, this court, if it decides not to exercise its discretion and certifying, can look to Montana Supreme Court precedent when it comes to the formation of contracts, specifically consent, and also consideration. And here, neither of those two existed. So the consideration issue of the courts there was because the agreement to arbitrate was mutual, that both sides agreed to arbitrate. That was sufficient consideration. And we have case law as well. It says that. So why isn't that consideration? Your Honor, I think for two reasons. One, if this court looks to the persuasive authority by the Montana District Court and in DNA, the Myers, this court dealt with an issue, even though it was regarding a consumer and a credit card company, specifically addressing that this type of mutual agreement is not a bargained for promise and would not, in fact, equal consent or consideration in this case. And as Montana state courts weighed in on this because the district court is, of course, finding or even necessarily persuasive on Montana law. Understood, Your Honor. I do understand it is persuasive and not binding. However, the Montana courts have not specifically addressed the issue in this type of context where consent does not exist and no arbitration agreement has been signed. The other response to your question is that here holiday cannot establish that they were at a Montana statute requires for consideration that either a benefit is promised to an individual or there is a mutual detriment that exists to both parties here. It's clear based on the record. Holiday clearly wanted the arbitration to exist and for employees to arbitrate all employment disputes with holiday. The only detriment that occurred here was to Ms. LaFontaine herself, who did not make a knowing, intelligent, involuntary waiver of her constitutional rights to a jury trial and full legal redress. Additionally, if the court goes back to the issue of consent, this court specifically has held. If you look to Lins, the FFC Securities Corporation, although that is a case where the court found an arbitration agreement valid, the court did discuss the importance of that waiver and what that waiver should look like. That was a situation where there was actually a signed agreement. There was not an opt-out agreement here. All holiday had to do was one of two things. Either require a signature onto an arbitration agreement rather than making it opt out or obtain a signed acknowledgement similar to what this court upheld in the Circuit City case, where that acknowledgement warned the employee that if they failed to opt out, they were waiving their constitutional rights. It also advised the employee that they could speak with an attorney about it. It gave the employee at least 30 days to consider this and it said in the acknowledgement that your employment will not be affected if you decide to opt out of this. None of those things happened here in this case and that is why it's distinguishable. In order to reserve time for rebuttal, I do think this court should reverse based on the fact that the valid contract was not performed under Montana law, lacking consent and consideration, and that there was no mutual agreement to arbitrate. I'll reserve the rest of my time. You may do that. We'll hear from Ms. May. It doesn't make sense phonetically, so I don't expect anybody to get it. May it please the court, my name is Katie May. I'm with the law firm of Garlington Lawn in Robinson. We represent the appellee in this case, Holiday AL Management sub LLC, which I'll refer to today as Holiday. Your honors, we're here today to ask you to uphold the district court's order compelling arbitration in this case pursuant to the valid arbitration agreement between Holiday and appellant Carol LaFontaine. The district court acted in accordance with its role under the Federal Arbitration Act and in furtherance of the policy behind that act, requiring the enforcement of valid arbitration agreements. The district court's findings. I want to ask you about that. It appears to me that what the court said was it's good enough to have sent the material to the last known address and the rest, nothing else matters. That seems to be the legal ruling. And is that a correct statement of Montana law? I mean, my recollection of Montana law relating to employment is that it's extremely pro-employee in most respects. Um, so do you read the court's decision that way? And if not, how do you interpret it? Respectfully, your honor, I don't read the court's interpretation that way. What I believe the court looked at was the totality of the circumstances and it is Montana law. Montana law does presume receipt of a validly addressed piece of mail, and it is insufficient for the person just to say, I didn't get it as an excuse to say that they didn't receive it. Well, I think, excuse me, let's say you have a trial with say an insurance company or any trial and someone says I sent this to the correct address and the addressee and her husband both say it did not arrive. Are you saying that's not a genuine issue that a trier of fact could decide that indeed it was not received? Under Montana law, under the Baldwin versus Board of Chiropractors case, I think that court said that that is not a valid issue of fact at that point. It requires more than just saying I didn't get it. And in fact, the court in that case specifically said that Montana law presumes receipt of a validly received piece or address piece of mail. And that is why our case law has, excuse me, it's not a conclusive presumption, is it? Isn't it just sort of puts it in the other pocket to bring forth evidence? The citation says, requires more evidence than the addressee self-serving I didn't get it to overcome the presumption. So it requires more than her just saying I didn't get it, which is all she has put forward in this case. Her husband also said so. Is that not more? There's more than one sworn statement? I don't know that he said so in a sworn statement, Your Honor. But I think the dispute that she had the agreement and scanned the first page of it. So whether or not she got this piece of mail, Holiday did more than just send this mail. It posted it on the company's web portal, which she undisputedly had access to. And as a manager was expected to check and be aware of email all the managers, not only reminding them of the arbitration provision, but reminding them to tell their employees about it. And also to talk to them about the opt out process, the effective date. Holiday also sent it in their news publication that they send out, their newsletter, the Monthly World Holiday World. And there's no denial by Ms. LaFontaine that she received the emails to the managers or that she received the Holiday World publication. She simply doesn't recall whether or not she saw the part about arbitration. But she does admit that she scanned the first page of the agreement and discussed it with her supervisor. How long is the agreement, counsel? The agreement is five pages. So skimming the first page isn't much. How can someone skimming the first page of a five page agreement be deemed to have consented to all of it? Montana law is clear that just not reading or refusing to read an agreement doesn't defeat consent. You can't escape your obligations under that. Let's just separate these issues. Your statement was that the employee scanned the first page of the agreement. And so the inference is she received or had access to the agreement. I mean, it seems to me a different question about whether, is that correct? That is correct. So it's a different question whether she consented to it as a question of contract formation. And is there any Montana opinion on point that would say receipt of an agreement with an opt out provision where you don't opt out constitutes consent, where you've entered into the agreement? Right. There's no Montana Supreme Court case factually directly on point. However, we do believe that there is controlling Montana law that this court can apply. And in this situation, that would be Montana Code Annotated Section 28-2-501, which establishes that consent can be communicated by an omission that necessarily tends to the communication. We'd also look to... That's the same as the rule in Circuit City v. Nagy. But I mean, the case that cited for that was a very specific sort of situation where there was a contract with a renewal provision. And when the parties continued to perform under the contract after the original termination date passed, they were deemed to have consented to a renewal term. I mean, that's the typical situation where there's a course of dealings between the parties. Now here, and also in Circuit City for that matter, there was no such course of dealing. The person was an employee, continued as an employee, and then out of the blue, the employer decides they want to change the terms of the employment conditions and opt out. That seems very different than what your Montana Code is aimed at under common law. So what's the closest case to this situation and is not more like the situation I described from Nagy? Well, I think if the court looks at the Bitterroot International Systems v. Western Star Trucks Inc. case, that case talks about the standard is really whether based on the to be bound by the contract. And in this situation, where she had been given all of those documents by her employer, had talked to Mr., allegedly talked to Mr. Shearer about it, continued her employment, and never raised any other questions about it until she wanted to sue Holliday, her subjective intent not to be bound by it was not known to a reasonable person. And it's her objective conduct that we must look at. That's only if an opt-out could possibly be and create a contract. I mean, why should an employer expect their employees to take some sort of affirmative action to get out of the contract? Unless there's some cases or some ego structure in Montana that would make that a reasonable expectation, what would be the basis for that? Well, I think that Nagy case that the court has referred to before is directly on point in that regard. It was almost the exact same situation regarding consent is almost exactly the same, that consent can be communicated by omission, looking at the totality of the circumstances and the circumstantial evidence that would go to support consent. And as in Nagy, you know, this, her failure to act is equivalent of consent in this particular case. So Nagy is very much on point, but as Judge Graber points out, that comes up in a context where the court was supposed to be applying California law. Why would it be binding in Montana? Because Montana has nearly the identical law. In California, the law is that where circumstances or previous course of dealing between parties places the offeree under a duty or act to be bound, his silence or inactivity will constitute his assent. And as we discussed, those Montana statutes say the same thing, that consent can be communicated by an omission that tends necessarily to the communication at issue. And Montana does not require both parties to a contract to actually sign the contract. And Montana law recognizes implied acceptance based upon conduct. So in this situation, we think that this case is directly on point with the Nagy case. And that there's sufficient circumstantial evidence to find that her conduct objectively manifested her consent. For the first time in the record on her reply, appellant has argued that because she was apparently told by Mr. Shearer that she had already signed an agreement, that meant that she thought she had opted out. But this argument does not make sense because by her own testimony, she says she only scanned the first page and the opt out provision was on the second page. So if she believed she had signed one, if this conversation with Mr. Shearer had occurred, that would have meant that she believed that she had already consented to arbitration. You know, she continued to work for Holiday after that, never asked any follow-up questions. And it was only after she was terminated for unsatisfactorily performing her managerial duties that her undisclosed intent with respect to arbitration was revealed. In light of the weight and the totality of the circumstances, the district court was justified in determining that a reasonable person could objectively conclude that appellant's conduct showed an intent not to opt out of the arbitration agreement. The second element that appellant contends is not met is consideration. But under Montana law, an exchange in legal positions between parties is consideration. Here, pursuant to the agreement, both parties give up their respective rights to employment-related matters decided in a court proceeding, and this equates to consideration. Contrary to the appellant's position, the fact that Holiday was the one to propose the arbitration agreement does not mean there was no consideration. By the agreement's language, Holiday gave up its right to pursue employment-related claims in a court of law. Appellant cannot reasonably contend that just because the arbitration agreement was proposed by Holiday, that somehow changes the fact that it too gave up rights. There is no authority to support this position, and from a legal standpoint, it doesn't make sense because any contractual provision could be construed as being presented or desired by one party over another. In any event, in a similar case to this one, an exchange in legal positions vis-a-vis an arbitration agreement was determined by the Montana Federal District Court to be adequate consideration, and that case is the Snap-on Tools case. Furthermore, appellant's argument that she received nothing of value is unsupported. In addition to the change in legal positions, both parties received the value of the benefits of arbitration, and the Supreme Court of the United States has recognized that there are benefits to arbitration. That's a less costly and quicker resolution, it's a more flexible resolution, and in a less public forum. Nonetheless, counsel, there is a right to go to court in the absence of my concern about facts, because you mentioned that the District Court considered the totality of the circumstances and concluded certain things related to that. Was it your burden to demonstrate that there was consent, there was a contract to arbitrate? It was our burden to demonstrate that was a valid arbitration agreement and that the matter at issue was subject to that agreement, yes? So, it seems to me that there really are two options, and I'd like you to sort of respond to this thought. It seems to me that either the court should have permitted a full hearing of some kind to resolve any factual disputes that may be relevant, or we should take the facts in the light most favorable to the employee because you had the burden of proof. Why are those, if you disagree with one of those options, what is the right answer on that and why? Well, I do disagree, Your Honor, respectfully, is that because of the affidavits that were presented by the defendant, Ms. LaFontaine, the court considered those affidavits and those testimonies and found that Ms. LaFontaine's, whether the court did it on the record or did it off of the record, that Ms. LaFontaine's resuscitation was just not as credible as Mr. Shearer's. And Ms. LaFontaine was actually in the courthouse, which isn't reflected in the transcript very well. And when the court was asking her counsel questions during the hearing, counsel was turning to Ms. LaFontaine, asking her and then repeating it back. So is that how we ordinarily have factual disputes resolved? We have conflicting affidavits, no live testimony, and the district court just picks one? Is that, I mean, that seems quite irregular. Your Honor, quite frankly, I don't know if it's irregular or not. It is what occurred in this case. Is there a factual issue that would make a difference to the outcome? We do not believe so, Your Honor. Because of the totality of this circumstantial evidence, which supports that she consented to this arbitration. So, I mean, there's a factual issue of out receipt, which was resolved more or less as a matter of law. And then the issue of whether she consented or not seems to also be a legal issue, at least it was in Circuit City. So was there a dispute of facts about anything that would change the result in this case? No, there was no material issue, in fact, that would change the outcome from our perspective. Before you conclude, I'd like you to speak to the same question about certification to the Montana Supreme Court that we heard from plaintiffs. What's your client's position? Your Honor, if you'll indulge me to go over my time just a little bit so I can answer that question. We do not believe that certification to the State Supreme Court is warranted in this case. As this court's aware, that is a discretionary function. And in this position, we do not believe that the Montana State Supreme Court would be any better situated to apply the controlling Montana State law than the Ninth Circuit would be. While the exact factual scenario hasn't been confirmed, we believe that certification will result in a much longer delay in this case. The facts underlying the complaint occurred in April of 2015. The complaint was served in 2017, and the arbitration was held almost a year and a half ago in July of 2019. We believe that the Ninth Circuit has been able to address similar issues like this from other states without having to certify to the State Supreme Court, and we don't believe it's warranted in this case. And just to wrap up very quickly, and I will hurry, we believe that the District Court's decision should be upheld, that the District Court acted within accordance with the directive set forth in the FAA, and we respectfully ask the Court to uphold the District Court's decision in this case. Thank you. Thank you, Counsel. Ms. Harris, you have some rebuttal time remaining. There are two important... You have to, yeah, speak, speak loudly, please. Thank you, Your Honor. I think there are two important points for this Court to remember and consider here. One, in the argument that the Court considered the totality of the circumstances, looking to the argument by Holliday, part of that totality is that she continued her employment. That should not be considered by this Court. The fact that she continued her employment was a right and benefit that she was entitled to, and should not factor into circumstantial evidence here. Could you address the question I asked opposing counsel? Was there a factual dispute that, in your view, would make a difference here? I don't know that... I mean, it didn't obviously make a difference to Judge Haddon below, Judge Aikuda. I do think there is a factual dispute between my client and also between Mr. Shearer. I do not believe, and there's nothing in the record to support that Judge Haddon made a determination that Mr. Shearer was more credible than my client and her husband. However, that being said, even though I believe there is a factual dispute, it is the burden of Holliday, the employer in this case, to be able to prove to the Court that a contract did, in fact, exist. I do think it's important briefly to address the issue in the Baldwin case that was discussed by Holliday. If the Court looks to the facts of that case, it is completely different. Although it talks about mail being sent and a receipt, it dealt with a chiropractor who was renewing her license and had sent it to the agency, and then the agency, there was a claim, had not received the order. A completely different situation than in the context we have here, where an employer is sending a current employee mail. Both her and her husband state they did not receive it, and that mail is something that would waive her constitutional right to a jury trial and redress. So I don't believe that it is applicable in this case. Looking to the other cases cited, what's important for this Court to remember is that there is no case on point under Montana law. It is an issue of first impression, and that if an employer is going to require arbitration, it should not be done through an opt-out. For those reasons, we ask that the Court reverse the lower district court's decision or, in the alternative, exercise its discretion and certify this issue to the Montana Supreme Court. Thank you, counsel. The case just argued is submitted, and we're very appreciative of helpful arguments from both of you in this interesting and challenging case. And with that, we stand adjourned.
judges: Graber, Clifton, Ikuta